# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5320 | **DATE** | 2/2/2001 |
| **CASE TITLE** | U.S. Equal Employment Opportunity Commission vs. Ceres Terminals, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 27 Feb. 01 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The International Longshoremen's Association's motion for summary judgment is granted. The Equal Employment Opportunity Commission's motion for summary judgment is denied. Ceres Terminals, Inc.'s motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 5 2001 | |
| | Notified counsel by telephone. | | date docketed | 85 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 FEB -2 PM 3: 47 | date mailed notice | |
| WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CERES TERMINALS, INC., FEDERAL MARINE TERMINALS, INC., INTERNATIONAL LONGSHOREMEN'S ASSOCIATION ("ILA"), LOCAL 19 OF THE ILA, and GREAT LAKES DISTRICT OF THE ILA,<br><br>Defendants. | Case No. 99 C 5320<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is an action under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* (the "ADEA") brought by the Equal Employment Opportunity Commission (the "EEOC") against several employers and unions. Ceres Terminals, Inc. ("Ceres") and the International Longshoremen's Association (the "ILA") remain as defendants in this case, and all parties have moved for summary judgment. The EEOC and Ceres cross-moved for summary judgment on the issue of liability under the ADEA. Further, the EEOC and the ILA have cross-moved for summary judgment on whether the ILA is a proper party to this suit and responsible for the enforcement of the collective bargaining agreement that allegedly violates the ADEA.

85

**BACKGROUND**

The following facts are taken from the parties' Local Rule 56.1 submissions and are undisputed, unless specifically stated otherwise. The EEOC filed this complaint alleging age discrimination on behalf of 13 charging parties who received pension payments during a several month period in 1998, twelve of whom remain in the case. (EEOC Facts, ¶¶ 56, 57; Ceres Facts, ¶ 3.) Defendant Ceres is a stevedoring company whose work involves loading and unloading ships and barges at several ports on Lake Michigan. (Ceres Facts, ¶ 1.) Defendant ILA and Local 19 of the International Longshoremen's Association ("Local 19") represented Ceres employees at all times relevant to this dispute. (Ceres Facts, ¶ 2.)

In 1998, Ceres operated at several sites in Chicago. (EEOC Facts, ¶ 24; Ceres Facts, ¶¶ 6, 8.) Tore Sorensen, who is 61 years old, has been the Superintendent at Ceres since 1977. (Ceres Facts, ¶ 9.) In August of 1998, about 63% of longshoremen working at Ceres were 60 years old or older, and about 94% of the longshoremen were 40 years old or older. (Ceres Facts, ¶ 5.) Employees are hired at Ceres on a daily basis. (EEOC Facts, ¶ 20; Ceres Facts, ¶ 14.) Ceres communicates its daily hiring needs to Local 19 and conveys Ceres' hiring needs to the longshoremen via a telephone message machine. (EEOC Facts, ¶ 21; Ceres Facts, ¶ 16.) Longshoremen who appear for work on a given day are able to choose

from available positions based on their seniority. (EEOC Facts, ¶ 22; Ceres Facts, ¶¶ 21-23.) There are some positions, however, where workers are not hired based on their seniority. (EEOC Facts, ¶ 23.)

A collective bargaining agreement existed between Local 19 and Ceres covering the period from 1992 to 1994, and the parties extended that agreement until a new one could be negotiated. (Ceres Facts, ¶ 24.) Tony Sorensen and Kaare Eileraas, Ceres Senior Executive Vice President, were involved in the bargaining on behalf of Ceres. In July 1995, the ILA removed the officers from Local 19 for reasons wholly unrelated with this lawsuit, and Local 19 was placed in trusteeship pursuant to the ILA's constitution. The ILA appointed John Baker, who was a vice president with the ILA, as Trustee of Local 19, and he participated in the negotiations for the new collective bargaining agreement. (EEOC Facts, ¶ 10; Ceres Facts, ¶¶ 25, 27.)

The ILA and Local 19 are separate entities, each with its own officers, premises, bank accounts, and collective bargaining relationships. (ILA Facts, ¶ 3.) The President of the ILA had appointed Baker to be the trustee of Local 19 in July 1995, and as trustee Baker reported to and was supervised by the President of the ILA. (EEOC Facts, ¶¶ 11-13.) The EEOC alleges that Baker negotiated the 1998 CBA as an agent for the ILA, while the ILA alleges that Baker, as trustee, negotiated and executed the

contract on behalf of Local 19, not on behalf of the ILA. (EEOC Facts, ¶ 18, ILA's Resp. to EEOC, ¶ 18; ILA Facts, ¶¶ 8, 9.) Baker and Eileraas both eventually signed the new collective bargaining agreement (the "1998 CBA"), specifically titled "Agreement Between Ceres Terminals, Inc. and International Longshoremen's Association, Local 19, Great Lakes District Counsel, Atlantic Coast District, (GLDC-ACD) AFL-CIO, EFFECTIVE JANUARY 01, 1998-DECEMBER 31, 2001." (EEOC Facts, ¶ 42; Ceres Facts, ¶ 28; ILA Facts, ¶ 5.) Baker signed the agreement on a signature line titled "ILA LOCAL 19, GLDC-ACD, AFL-CIO, Michigan Avenue, CHICAGO, IL 60604."

The previous collective bargaining agreement between Ceres and Local 19, which was in effect from 1992 to 1994 and was extended until a subsequent agreement was reached, had a seniority provision titled "Break in Seniority" that provided that the seniority of any employee "shall be broken in the event" the employee voluntarily quits or retires or fails to work in the industry at least five hundred hours in a contract year. (EEOC Facts, ¶ 26; Ceres Facts, ¶ 29.) During the bargaining process that led to the 1998 CBA, Sorensen proposed the following additional provision, Section III.F.3, to be added to the Break in Seniority provision: "Receives a pension from the International Longshoremen's Association pension fund." (Ceres Facts, ¶¶ 30, 35.) The Longshoremen's Retirement Plan (the "Plan") is a defined benefits plan. An employee who completes ten or more years of vested

service is entitled to a deferred vested pension under the Plan, where a year of vested service is defined as a year where the employee completed 500 or more hours of service. (Ceres Facts, ¶¶ 33, 34.) The Tax Reform Act of 1986 amended the Internal Revenue Code to require pension plans to distribute benefits when the eligible employees reach the age of 70.5. The Internal Revenue code and the Plan have since been amended, however, and no longer require employees to begin receiving pension distributions at any specific age. 26 U.S.C. § 401(a)(9)(C). Although this change in the law went into effect prior to the time at issue in this case, it appears that the Plan was not amended to reflect this change prior to starting distributions to the claimants at issue in this case.

The amended Article III, Section F in the 1998 CBA states the following:

> The seniority of any employee shall be broken and/or forfeited in the event they:
>
> 1. Voluntary quit, retire, or is terminated [sic]; or
>
> 2. Fails to work in the industry at least five hundred (500) hours in any fiscal year, unless such failure is allowable under the standards specified in this Article.
>
> 3. Receives a Pension from the Marine Terminal and Welfare Fund.

(EEOC Facts, ¶¶ 25, 27.) Sorensen testified in his deposition regarding why he suggested the additional provision. He testified as follows:

- 5 -

Q: And what was the purpose of your proposing that additional Section 3?
A: The purpose was mainly to save the port. I'm extremely concerned about the port as it is now. And I suggested this as to keep the younger people in there.

We have people 50, 40 years old, 30 years old, they are leaving us. They can't make a living. They have family. And I have people that take pension and they take out the social security. And my feeling is that they can make a good living at it, and they should let the people in their forties, fifties work so at least we don't in another five, ten years have nothing left out there. That was the purpose of it. . .

Q: Now, you mentioned that part of the reason – or the reason of the proposal was to save the port. And you mentioned that there were longshoremen in their thirties or forties or fifties who were leaving?
A: Mm-hm.

Q: Can you give me either the names, or . . . what number of people?
A: . . . Just now we can muster six gangs on the waterfront . . . Three years ago I could muster 12. If I have vessels in the port, I cannot muster enough gangs to satisfy the customer. I sometimes have to take them in from the street . . . My good men have left.

Q: And the ones who are remaining include older longshoremen?
A: Yes.

Q: And is it correct that the reason why some of the younger men left was that they were not necessarily being hired with their level of seniority?
A: Yes.

Q: And so in order to solve that problem, the proposal was to have the seniority of older workers receiving a pension basically have their seniority forfeited.
A: Yes.

(Sorensen Dep., at 33-37.) The parties, of course, disagree about the meaning of his testimony.

Section II.F.3 was implemented starting April 29, 1998, and longshoremen who were drawing pensions who appeared at Ceres for work were informed that their seniority was not being recognized. (EEOC Facts, ¶¶ 46-48; Ceres Facts, ¶ 36.) Sorensen did not inform the longshoremen that day nor were they ever informed that if they chose to cease receiving pension payments, they would not lose their seniority. (EEOC Facts, ¶¶ 49, 59, 60.) The longshoremen who were receiving pension payments could still be hired, and some were, but they could only be hired to available positions that were left after employees with seniority had already been hired. Further, the seniority of employees who were over 70.5 years but not eligible for a pension was recognized. (Ceres Facts, ¶¶ 41-42.)

Based on the advice of counsel, Ceres stopped enforcing Section III.F.3 of the 1998 CBA on September 3, 1998. (EEOC Facts, ¶ 55; Ceres Facts, ¶ 43.) In its Complaint, the EEOC alleges that for about a four-month period, from about April 27, 1998 through about September 3, 1998, the Defendants refused to recognize the seniority of a group of working longshoremen over age 70.5 who were receiving pension disbursements based on Article III.F.3 of the 1998 CBA. The EEOC alleges that because work was assigned based on seniority, the employment opportunities of those longshoremen were limited based on their age.

## DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the non-moving party and draws all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"The standard governing summary judgment is clear: '[I]f no rational jury could, on the evidence presented in the summary judgment proceeding, bring in a verdict for the party opposing summary judgment . . . then summary judgment must be granted.'" *Oates v. Discovery Zone*, 116 F.3d 1161, 1175 (7th Cir. 1997) (citing *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 660 (7th Cir. 1991)). The non-movant has to produce more than a scintilla of evidence in support of its position. *See Anderson*, 477 U.S. at 252.

### ADEA Liability

The EEOC argues that Article III.F.3 of the 1998 CBA targets longshoremen that are over 70.5 years of age and that but for their

age the seniority of the longshoremen would not have been forfeited. The EEOC further argues that the addition of Subsection 3 of Article III of the 1998 CBA must be read in light of the existing Subsection 1, which applies to persons who receive a pension by voluntarily retiring. Because Subsection 1 applies specifically to those who voluntarily retire, the EEOC argues that Subsection 3 "targets persons who receive pension payments for another reason," meaning because they are 70.5 years old or older and are thus receiving pension payments pursuant to provisions in the Longshoreman's Retirement Fund that mandates payments at that age. (EEOC Mem., at 6-7.)

Ceres, in its motion for summary judgment and in its response to the EEOC's motion for summary judgment, argues that the EEOC relies on a disparate impact theory that has been soundly rejected in this circuit. Ceres argues that the EEOC's ADEA case is a disparate impact case not a disparate treatment case because the case is premised on an argument that the "**effect** of the parties' enforcement of Section III.F.3 of the 1998 CBA was to disadvantage longshoremen over the age of 70 1/2." (Ceres. Mem., at 7)(emphasis in original). Ceres argues that because the Seventh Circuit has rejected a disparate impact theory under the ADEA and only permits disparate treatment cases, which require a showing of intent to discriminate on the basis of age, the EEOC's claim should be

dismissed because there is no evidence in the record of such intent.

Ceres is correct that Seventh Circuit precedent on disparate impact theories for ADEA cases is well-settled. Disparate treatment occurs when an employee is treated less favorably simply because of his age and proof of discriminatory motive is required, while disparate impact is the result of more subtle practices that are facially neutral but which in fact affect one group more harshly than another. *EEOC v. Francis W. Parker School*, 41 F.3d 1073, 1076 (7th Cir. 1994). Based on the Supreme Court's opinion in *Hazen Paper Co. v. Biggens*, 507 U.S. 604 (1993), the Seventh Circuit has repeatedly held that disparate impact does not create a viable cause of action under the ADEA. *See, e.g., Adams et al. v. Ameritech Servs.* Inc., Nos. 98-1506, 98-2259 & 98-2307, 2000 WL 1569416 (7th Cir. Oct. 23, 2000); *Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994); *Francis W. Parker School*, 41 F.3d at 1076-78.

Therefore, in a disparate treatment case, liability depends on whether the employee's age "actually motivated the employer's decision" and had a "determinative influence on the outcome." *Hazen Paper*, 507 U.S. at 610. The ADEA provides an employee with a cause of action "when an employer denies a worker an employment opportunity based on the belief that older employees are less efficient or less productive." *Francis Parker*, 41 F.3d at 1076.

In *Hazen Paper*, the Supreme Court addressed whether the discharge of an employee motivated by the employer's desire to avoid the vesting of the employee's pension benefits was sufficient to state a disparate treatment claim under the ADEA. Because the evidence did not demonstrate that the employer's decision was based on the employee's age, the Court held that the disparate treatment claim was deficient. *Hazen Paper*, 507 U.S. at 611-12. The Court explained that when the employer's decision is wholly motivated by factors other than age, "the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age as pension status typically is." *Hazen Paper*, 507 U.S. at 611. Because age and years of service are analytically distinct, an employer may take account of one while ignoring the other. *Id.* The *Hazen Paper* Court declined to address, however, "the special case where an employee is about to vest in pension benefits as a result of his age, rather than years of service" and specifically limited its holding to cases where pension benefits would have vested "by virtue of the employee's years of service." *Hazen Paper*, 507 U.S. at 613.

Therefore, when an employment decision is not based on misperceptions about the competence of older workers, there is no ADEA violation. Employment decisions based on years of service or pension status of an employee are not necessarily age based, unless the plaintiff can demonstrate that the reason given was a pretext

for a stereotype-based rationale. The plaintiff must demonstrate that the employer's rationale is pretextual and that the employment decision in question is predicated on a conscious or unconscious stereotype. *Francis Parker,* 41 F.3d at 1078.

Ceres argues that Section III.F.3 is not tied to an employee's age but is a facially neutral provision tied only to the employee's pension status. Further, Ceres argues that there was an employee who was older than 70.5 years but not eligible for a pension and his seniority was recognized. (Ceres Mem., at 11-12) Ceres argues that the EEOC's disparate treatment claim fails because there is no evidence that Ceres intended to discriminate against older workers. Ceres also states that Sorensen himself is 61 years old, and that 94% of its employees are 40 or older with 63% being 60 or older which also demonstrate that there was no intent to discriminate against older workers.

Clearly, the facts of this case are distinguishable from the facts in *Hazen Paper.* Eligibility for the pension plan in *Hazen Paper* was based solely on years of service, whereas the receipt of benefits under the pension plan here is based both on the age of the employee as well as the number of years of vested service. Thus, as Ceres points out, an employee can be over 70.5 years old but not be receiving pension payments because he is unqualified.

The Court in *Huff v. UARCO, Inc.,* 122 F.3d374 (7th Cir. 1997), addressed the question specifically left open in *Hazen Paper* and

provides the closest analogy to this case. A brief description of the pertinent facts is warranted. In *Huff*, the employer's pension plan provided that plan participants who had completed ten years of service and attained the age of fifty-five were eligible for early retirement. The plan also provided that employees who terminated employment prior to becoming eligible for early retirement may elect a lump sum refund of all of that employee's contributions under the plan. Employees terminating employment after becoming eligible for early retirement, however, were entitled only to a payout of benefits over time, actuarially adjusted to take into account the extra years of receiving the benefit. The plaintiff employee argued that the denial of the lump sum payout to certain workers over fifty-five was direct evidence of discrimination. In response, the employer, citing *Hazen Paper*, argued that it was entitled to differentiate between workers on the basis of their years of service.

After noting that the Supreme Court in *Hazen Paper* specifically declined to consider "the special case where an employee is about to vest in pension benefits as a result of his age, rather than years of service," the *Huff* Court noted that its factual scenario was a "hybrid of age and years of service." 122 F.3d at 388, citing *Hazen Paper*, 507 U.S. at 613. The Court found that the case presented "a close approximation" of the case that the *Hazen Paper* Court declined to address because the age of the

employee was an express condition of receiving a benefit. The Court distinguished the case from a disparate impact case explaining it was "not a case where there is merely a correlation between age and the denial of a particular benefit" because the policy "draws an express line between workers over fifty-five and those under." 122 F.3d at 388. Under the pension plan in *Huff*, no employee under the age of fifty-five would ever be denied the lump sum payment regardless of that worker's years of service. Noting that the employee had not made a cross motion for summary judgment, the court reversed the grant of summary judgment and remanded.

This case is very similar to *Huff* but with one distinction. Here, an employee's receipt of pension plan disbursements was directly correlated with age, though other factors are involved in determining eligibility for the pension. Although there was one and possibly more than one employee who was older than 70.5 years who did not collect a pension and retained seniority, like in *Huff*, no employee under age 70.5 was ever denied his seniority based on this provision. This policy is different from *Huff*, however, in that Section III.F.3 does not facially make the age distinction. A reasonable jury could find that pension status was a proxy for age and that Ceres intended to treat older workers differently and did so based on the known correlation between pension status and age. *See Hazen Paper*, 507 U.S. at 613 ("Pension status may be a proxy for age, not in the sense that the ADEA makes the two factors

equivalent . . . but in the sense that the employer may suppose a correlation between the two factors and act accordingly.") Therefore, a reasonable jury could find, but is not compelled to find, that this was disparate treatment.

Furthermore, a reasonable jury could also find that the Sorensen testimony demonstrated motive and intent to discriminate against employees over 70.5 years. *See Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir.1999), *quoting* Huff, 122 F.3d at 380 (internal quotations omitted)( Because intent and credibility are central factors in the determination in employment discrimination cases, courts must apply the summary judgment standard with "added rigor.") In *Adams v. Ameritech Services. Inc.*, 231 F.3d 414 (7th Cir. 2000), the court held that a manager's comment about wanting to change the workforce by hiring people who were under 45 years old along with the accompanying explanation that it was really only the expression of a desire to hire from colleges again was problematic and along with other evidence, was enough to reverse the district court's grant of summary judgment for the employer. *Id.* at 429. Even with Ceres' arguments that the provision was added for economic reasons to save the port, the testimony is sufficient to allow a reasonable jury to find otherwise. The evidence would allow, but not compel, a reasonable jury to find discrimination. Therefore, Ceres' motion for summary judgment is

denied, and the EEOC's motion for summary judgment on liability is also denied.

## ILA's Liability

Defendant ILA moved for summary judgment on the ground that it is neither a party to nor responsible for the enforcement of the 1998 CBA and thus is not a proper party to this action. The ILA argues that an international union and its local unions are separate and distinct legal entities, that no agency relationship exists between the two unions by virtue of their affiliation, and that the trusteeship imposed on Local 19 by the ILA does not make the ILA responsible for Local 19's conduct. The EEOC also moved for summary judgment on this issue arguing that "Baker, the trustee appointed by the ILA to take over the affairs of Local 19, was the agent of the ILA" when he negotiated and signed the 1998 CBA. (EEOC Resp., at 12.) The EEOC's agency theory is premised on the fact that Baker was appointed by, reported to, and was under the supervision of the president of the ILA. The EEOC further argues that Baker, as the trustee for Local 19, was not actually acting for Local 19 because the Local 19 had no authority to negotiate or sign a contract during the trusteeship. (EEOC Resp., at 11.)

The EEOC's argument lacks merit. The EEOC has failed to cite any precedent, controlling or not, to support its agency argument. Baker's status as a trustee who signed the 1998 CBA on behalf of Local 19 does not create an agency relationship. *See Carbon Fuel*

*Co. v. United Mine Workers of America*, 444, U.S. 212, 216-218 (1979). In *Campbell v. International Brotherhood of Teamsters*, 69 F. Supp. 2d 380 (E.D. N.Y. 1999), the plaintiff argued that the international was liable for the discriminatory acts of the local union because, among other arguments, the trustees of the local union were agents of the international. The court held that the status of the trustees that were appointed by the international did not confer agency on the trustees because they owed a fiduciary duty to the local, not to the international. *Id.* at 386, citing *Tile, Marble, Terrazzo, Finishers, Shopworkers, and Granite Cutters Int'l Union v. Ceramic Tile Finishers Union, Local 25*, 972 F.2d 738 (7th Cir. 1992)(trustees appointed by the international to the local owed a fiduciary duty to the local even where the local's interests are contrary to the international's interests).

Furthermore, the EEOC has failed to meet its burden to set forth evidence supporting the elements of agency to defeat the ILA's motion for summary judgment. In order for the EEOC to establish a principal-agent relationship, it must show that the ILA had the right to control Baker's conduct and that Baker had to the power to affect the legal relations of the ILA. *See Chemtool, Inc. v. Lubrication Technologies, Inc.*, 148 F.3d 742, 745 (7th Cir. 1998). Baker was acting as the trustee for Local 19, he was negotiating on behalf Local 19, and he signed the 1998 CBA on behalf of Local 19. The EEOC has not set forth evidence that would

allow a reasonable jury to find that Baker signed the 1998 CBA on behalf of the ILA and that he was affecting the legal relationships of the ILA.

Further, the ILA Constitution expressly provides that "[n]o Local Union or any officer or agent thereof shall have power to make any contract binding upon or incur any liability on behalf of the I.L.A. without the written authority of the Executive Council. Article XXIII, § 17. The ILA Constitution also provides that "[n]o officer, representative, or organizer of a Local Union or any subdivision of the I.L.A. shall be, or deemed to be, an agent of the I.L.A. and to the extent that their acts or conduct are acts of agency under the law of agency, they shall be agents only of such local union or such subdivision." Id. If, as the EEOC argues, Baker negotiated and signed the contract as an agent of the ILA, then the ILA as the principal would be a party to the contract. The EEOC states, however, that it is not arguing that the ILA is bound by the terms of the 1998 CBA. (EEOC's Resp. to ILA, at 11.) The EEOC seems to be arguing that Baker acted as an agent for liability purposes in this lawsuit but that the ILA was not a party to the contract and was not responsible for the performance or enforcement of the contract. The EEOC cited no authority for the proposition that contracts negotiated and signed by a trustee appointed to a local union by the international bind the international. Therefore, the ILA's motion for summary judgment

is granted, and the EEOC's motion for summary judgment on this issue is denied.

Last, to the extent that the EEOC argues that Ceres is liable for the work that the claimants lost at Federal Marine, that argument lacks merit. Federal Marine is a separate and independent employer, and the EEOC has settled with Federal Marine for any damages it claims that Federal Marine caused.

### CONCLUSION

Therefore, for the foregoing reasons, the ILA's motion for summary judgment is GRANTED, the EEOC's motion for summary judgment is DENIED, and Ceres' motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: February 2, 2001